1  Sophia G. Gold (SBN 307971)
   *sgold@kalielgold.com*
2  **KALIELGOLD PLLC**
   490 43rd Street, No. 122
3  Oakland, California 94609
   Telephone: (202) 350-4783
4
   Jeffrey D. Kaliel (SBN 238293)
5  *jkaliel@kalielpllc.com*
   Amanda J. Rosenberg (SBN 278507)
6  *arosenberg@kalielgold.com*
   **KALIEL GOLD PLLC**
7  1100 15th Street NW, 4th Floor
   Washington, DC  20005
8  Telephone: (202) 350-4783

9  *Attorneys for Plaintiffs and the Class*

10

11                    **UNITED STATES DISTRICT COURT**

12                 **NORTHERN DISTRICT OF CALIFORNIA**

13  MINETTE VELAZQUEZ and JULIA          Case No.
    CLARK, on behalf of themselves and all others
14  similarly situated,                  **CLASS ACTION COMPLAINT**

15                          Plaintiff,   **DEMAND FOR JURY DEMANDED**

16         vs.

17  ORDERPROTECTION.COM, INC.,

18                          Defendant.

19

20         Plaintiffs Minette Velazquez and Julia Clark, on behalf of themselves and all others

21  similarly situated, complain and allege upon information and belief based, among other things, on

22  the investigation made by Plaintiffs and through her attorneys, as follows:

23                              **INTRODUCTION**

24         1.     This is a proposed class action seeking monetary damages, restitution, and public

25  injunctive and declaratory relief from OrderProtection.com, Inc. ("OrderProtection"), arising from

26  its unfair and deceptive addition of junk fees to consumers' shopping carts.

27         2.     When consumers browse products on e-commerce websites, the e-commerce

28

                                          1

websites will advertise the price of their retail items, along with an advertisement for either free or flat-rate shipping. Those pricing representations are false, however, because OrderProtection encourages e-commerce retailers to surreptitiously add junk fees to consumer purchases, including OrderProtection's so-called "order protection" fee.

3.      As discussed in detail herein, the assessment of these fees is deceptive and unfair, since: (a) OrderProtection sneaks these fees into consumers' shopping carts; (b) the fees are nothing more than an additional cost for shipping, rendering retailer promises for "free" or flat-rate shipping false; (c) the fees themselves are deceptively named and described; and (d) the fees provide no added value to consumers and reasonable consumers, like Plaintiffs, who would not knowingly choose to pay them absent OrderProtection's deception.

4.      Thousands of e-commerce customers like Plaintiffs have been assessed hidden shipping charges for which they did not bargain due to OrderProtection's deceptive and unfair tactics.

5.      By unfairly obscuring consumers' true shipping costs, OrderProtection deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true shipping charges. To wit, most major e-commerce sites do <u>not</u> assess such a fee.

6.      Plaintiffs seek damages and, among other remedies, public injunctive relief that will fairly allow consumers to decide whether they will pay shipping costs.

## PARTIES

7.      Plaintiff Minette Velazquez is a resident and a citizen of Windsor, California.

8.      Plaintiff Julia Clark is a resident and a citizen of Falls Church, Virginia.

9.      OrderProtection is an American software company headquartered in Lehi, Utah, that provides services to e-commerce retailers.

## JURISDICTION AND VENUE

10.      This Court has original jurisdiction over this action, among other reasons, under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed Class is comprised of at least 100 members; (2) at

1  least one member of the proposed Class resides outside California; and (3) the aggregate claims of

2  the putative Class members exceed $5 million, exclusive of interest and costs.

3        11.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because OrderProtection

4  is subject to personal jurisdiction here and regularly conducts business in this District, and because

5  a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this

6  District.

7                    **FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

8  **I.      The Rise of OrderProtection**

9        12.    OrderProtection offers various services to e-commerce retailers related to shipping,

10  including its purported "order protection."

11        13.    OrderProtection ingratiates itself with e-commerce retailers by promising it can help

12  retailers make more money from the shipping rates they charge consumers. For example,

13  OrderProtection promises to help retailers "boost profits" with order protection:

14



23        14.    But the way in which OrderProtection helps e-commerce retailers "boost profits" is

24  through deception. As described herein, OrderProtection directs e-commerce retailers who use its

25  services to install a widget on its website. That widget adds a hidden, _pre-selected_ box or toggle,

26  like the one displayed in the image below, that automatically adds junk fees to all orders. This

27

28

CLASS ACTION COMPLAINT

method of adding on fees is designed to go undetected by consumers and thus provide additional revenue to both OrderProtection and e-commerce retailers who use it:



15.     On information and belief, OrderProtection designs the interface presented by merchants to consumers regarding the add-on fee, including the name of the fee, the time at which the fee is first mentioned during the checkout process, the time at which the fee amount is added to the purchase price, and the pre-selection of the box or toggle for the fee. On information and belief, OrderProtection uses sales tactics that pressure merchants into pre-selecting boxes or toggles at checkout that automatically add order protection and other fees by default.

16.     The Wall Street Journal has highlighted this problem, stating:

> Some brands automatically add optional coverage to orders. **_Customers have complained the fees are disclosed in small fonts, made to appear mandatory when they are not or are displayed late in the online checkout process_**.

Imani Moise, *Porch Pirates are Now Raising the Price You Pay at Checkout*, Wall Street Journal, Dec. 25, 2024, available at https://www.wsj.com/personal-finance/package-theft-hidden-fee-higher-prices-325c4a34?mod=Searchresults_pos3&page=1 (emphasis added).

17.     Upon information and belief, OrderProtection is aware that, by programming its widget to automatically opt in consumers to its "order protection" fees, most consumers will unknowingly purchase the protection. OrderProtection is further aware that, if its widget were programmed to offer *optional* order protection (requiring an opt-in), the vast majority of consumers would not purchase its product.

18.     Worse, OrderProtection's widget automatically opts consumers into additional

CLASS ACTION COMPLAINT

shipping-related junk fees even when the e-commerce website at issue expressly and prominently promises that shipping is completely "free" or has a flat price.

19.    OrderProtection receives a significant portion of all fees it is able to foist upon consumers, thereby incentivizing OrderProtection to minimize the number of persons who opt out of its fees.

20.    Because OrderProtection's practice is deceptive and unfair, Shopify, which handles the technology infrastructure for many direct-to-consumer brands and larger companies, recently informed merchants that automatically adding optional charges at checkout will be banned, starting in February 2025. *Id*.

21.    This ban is too little, too late to help the hundreds of thousands of consumers already deceived and exploited like Plaintiffs.

## II.    OrderProtection Surreptitiously Adds Fees to Consumers' Carts

22.    Here's how OrderProtection's deception works. When a consumer views an item online through an e-commerce retailer, the consumer is informed that the item will either be delivered for free or for a flat rate.

23.    Once the consumer begins the checkout process of the e-commerce retailer's website, a small fee for "order protection" is added to the cart, without the consumer having done anything at all to have added the item to the cart.

24.    While the e-commerce retailer's checkout page displays the toggle adding the fee, the toggle is tiny and purposely designed to go unnoticed by consumers. So, consumers who wish to check out under the assumption that they are receiving free or flat-rate shipping simply proceed through the checkout process without knowing that they are not, in fact, receiving free or flat-rate shipping. Consumers are left entirely unaware that the added "order protection" charge is optional and must be removed by *unchecking* the box adding the fee.

16.    Thus, if consumers even *notice* a fee added to their transactions, they are still left entirely unaware that the added "order protection" fee is optional, because it is presented in the cart as mandatory.

17.     This pre-selection and automatic opting in of consumers to junk fees is itself unfair and deceptive.

18.     Many consumers do not notice that an additional fee is being added to their order. Others believe that they have no choice but to pay this fee. Others notice the previously undisclosed fee but decide to go through with the purchase anyway: they have already invested substantial time and effort inputting their information into OrderProtection's system. So, it doesn't make sense to start over and research whether there may be some other way to avoid the fee. There is no incentive to reverse course—there is only an incentive to pay the fee, be done with it, and avoid the burden of finding a way to avoid the fee, if the consumer can even figure out how to avoid the fee at all after navigating OrderProtection's deceptive screens. The deceptive checkout practice has done its job and diverted the sale to OrderProtection.

19.     As the FTC notes, "[f]or years, unscrupulous direct-mail and brick-and-mortar retailers have used design tricks and psychological tactics such as pre-checked boxes, hard-to-find-and read disclosures, and confusing cancellation policies, to get consumers to give up their money or data." *FTC Report Shows Rise in Sophisticated Dark Patterns Designed to Trick and Trap Consumers,* Sept. 15, 2022 (available at https://www.ftc.gov/news-events/news/press-releases/2022/09/ftc-report-shows-rise-sophisticated-dark-patterns-designed-trick-trap-consumers).

20.     The FTC further notes in its *Enforcement Policy Statement Regarding Negative Option Marketing* that **"[a] 'pre-checked box' does not constitute affirmative consent."** https://www.ftc.gov/system/files/documents/public_statements/1598063/negative_option_policy_st atement-10-22-2021-tobureau.pdf at p. 13 (emphasis added). Similarly, an item automatically added to the cart, without having done anything whatsoever to add that item, does not constitute affirmative consent.

## III.     The Add-On Fees Render Promises of Free or Flat-Rate Shipping False

21.     Even beyond the deceptive way in which OrderProtection's fees are added, the fees themselves are additionally deceptive because they directly contradict other promises on e-commerce retailers' websites regarding "free" or flat-rate shipping. That is because

OrderProtection's add-on fees are actually a disguised shipping charge.

22.      Whatever the order protection fee is for—and as described herein, it is totally unclear—it is a fee somehow related to shipping of the products purchased by consumers.

23.      But, as described herein, e-commerce websites that use OrderProtection's widget promise "free" shipping on certain orders and a flat-rate price for shipping on other orders. These are clear promises that the total, marginal cost of having products shipped—that is, moved from the retailer to the consumer—are represented by the "free" or flat-rate shipping price representation.

24.      However, OrderProtection decided it could actually charge more for shipping, thereby increasing profitability for both OrderProtection and the e-commerce retailer, by misrepresenting the true shipping costs to consumers.

25.      OrderProtection was aware, or should have been aware, that consumers were and would be deceived by an add-on shipping fee at the same time that a promise of "free" or flat-rate shipping was being made.

26.      The deceptively-added order protection fee is a hidden shipping fee. This renders false e-commerce retailers' promise of a free or a flat, low-cost shipping fee.

27.      By unfairly obscuring its charges to consumers, OrderProtection deceives consumers and gains an unfair upper hand over its competitors.

**IV.    OrderProtection's "Order Protection" Fee Is Inaccurately Named and Described and Provides No Added Value to Consumers**

28.      In addition to the manner in which OrderProtection's fees are added and the fact that the added fees render other "free" or flat-rate shipping promises false and deceptive, OrderProtection's fees are nonsense fees that provide little or no value to consumers.

29.      Even beyond the deceptive manner in which the fees are added and the fact that the fees themselves directly contradict other promises on e-commerce retailers' websites regarding "free" or flat-rate shipping, the "order protection" fees are also deceptively named and described.

30.      First, the fee provides little or no *additional* "protection" for shipments than already exists. Most online retailers provide replacements and allow for returns of products. Therefore, the

1  order protection fee provides no extra protection for goods that arrive damaged. OrderProtection

2  misrepresents and omits material facts about that truth.

3        31.    Moreover, popular shipping services like UPS, Federal Express, and USPS Priority

4  Mail *automatically* include order protection for the first $100 worth of value in a package when

5  goods are not delivered, stolen or damaged. OrderProtection misrepresents and omits material facts

6  about that truth, too. Thus, for the vast majority of consumers—those who are paying to ship a

7  product costing less than $100—"order protection" is entirely worthless, because they are already

8  provided the same protection by the shippers.

9        32.    Additionally, in the event goods are not delivered, stolen, or damaged, consumers

10  can report the issue to their credit card company or bank, who will often reverse the charge. Indeed,

11  credit cards are a popular option for consumers making online purchases for this reason.

12        33.    For all these reasons, OrderProtection's order protection fee is deceptively named

13  and described.

14        34.    Even beyond the deceptive manner in which OrderProtection's fees are added, the

15  fact that fees themselves directly contradict other promises on e-commerce retailers' websites

16  regarding "free" or flat-rate shipping, and the fact that the "order protection" fees are deceptively

17  named and described, they also provide virtually no additional value to consumers. No reasonable

18  consumer would knowingly elect to pay for the "order protection" fee because it provides

19  essentially zero additional value to consumers.

20        35.    As described above, damaged goods may already be returned to the retailer; third

21  party shipping services like USPS, UPS, and FedEx already provide some insurance coverage; and

22  lost or stolen packages can be reported to credit card companies for chargebacks. Accordingly, the

23  additional fee serves no purpose.

24        36.    On information and belief, a significant portion of the fee does not even go toward

25  order protection but instead goes toward OrderProtection's and e-commerce retailers' profits.

26        37.    Worse, even in the exceedingly rare case when a consumer chooses to make a

27  claim—such claims are exceedingly rare because of the numerous other self-help methods

28

described above and also because most consumers do not even know they have "protection"—OrderProtection works to make it difficult or impossible for consumers to actually recover anything from those claims, creating numerous obstacles for consumers. Numerous online complaints to the Better Business Bureau confirm as much:

> I paid for insurance to cover if my order arrived damaged. My order did arrive damaged and orderprotection said that they would only refund 25% of my order not replace the items as advertised. This is a scam service, paying for insurance only to be denied coverage when there is an issue. I provided clear photos of the damage and was not given the service I paid for.[1]

> I paid for this company's services to provide insurance for a collectible record that was shipped from **********. the shipment arrived damaged, and this company tried to tell me that because the record packaging/sleeve/case was damaged and not the record itself, I couldn't get a refund from them and to contact **********, who sent me back to this company. I explained that the sleeve is part of [t]he collectible and has value to as part of the product and since it is damaged, I wanted a refund.[2]

> My package was delivered to wrong address. I opened the claim and for 2 weeks there is no reply to my claim. No support, no one is answering. After a week will call bank to dispute transaction and report this organization.[3]

## V.     OrderProtection's Fees are Junk Fees and Violate Federal and State Guidance

38.     OrderProtection's fees, such as its order protection fee, are precisely the type of "Junk Fees" that have come under government scrutiny in recent years:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.

The White House, The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition, Mar. 5, 2024, available at https://www.whitehouse.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/#_ftnref3.

///

---

[1] https://www.bbb.org/us/ut/lehi/profile/online-shipping-broker/orderprotectioncom-1166-90048629/complaints.
[2] Id.
[3] Id.

CLASS ACTION COMPLAINT

39.     As the Federal Trade Commission said recently regarding its effort to combat Junk Fees:

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.

Fed. Trade Comm'n, <u>FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees</u>, Oct. 11, 2023, available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

40.     In July 2024, California expanded its Consumers Legal Remedies Act ("CLRA"), amending it to make "drip pricing" illegal. Drip pricing is advertising a price that is less than the actual price that a consumer will have to pay for a good or service. *See* Cal. Civ. Code § 1770(a)(29). Under the new California law, it is now illegal to advertise a low price for a product, only for that product to be subject to additional or mandatory fees later. In other words, "the price listed or advertised to the consumer must be the full price that the consumer is required to pay." *See* California Department of Justice, Office of the Attorney General, *SB 478 Frequently Asked Questions*, available at https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf (last accessed Sept. 16, 2025). As the California Department of Justice stated:

> Businesses are free to explain how they set their prices or to *subsequently* itemize the charges that make up the total price that they charge customers. However, the price they advertise or display must be the total price that customers will have to pay for the good or service. Knowing the price of a good of service is essential to competition, and displaying a price that is less than what the customer will actually be charged is deceptive.

*Id*. at p. 4 (emphasis added).

41.     In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising," the FTC makes clear that, when advertising and selling are combined on a website, and the consumer will be completing the transaction online, the disclosures should be provided before the consumer makes the decision to buy—for example, before the consumer

1  "add[s] to shopping cart." *See* Fed. Trade Comm'n, .com Disclosures: How to Make Effective

2  Disclosures iN Digital Advertising at ii, 14 (Mar. 2013), available at

3  https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-

4  advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.

5      42.    OrderProtection's conduct also violates the federal Restore Online Shoppers'

6  Confidence Act, 15 U.S.C. §§ 8401–05 ("ROSCA"). Specifically, OrderProtection used "negative

7  option" sales "[that] took advantage of consumers' expectations." *Id.*, § 8401(8).   Moreover,

8  OrderProtection violated ROSCA by using a negative option feature that (1) did not provide text

9  that clearly and conspicuously discloses all material terms of the transaction before obtaining the

10  consumer's billing information; and (2) did not obtain the consumer's express informed consent

11  before charging the consumer's credit card, debit card, bank account, or other financial account for

12  products or services through such transaction. *Id.*, § 8403(1), (2).

13     43.    OrderProtection violates federal guidance by adding the shipping fees as line items

14  after the consumer "add[s] to shopping cart," and by failing to disclose the nature of these fees.

15  **VI.    Plaintiff Velasquez's Experience**

16     44.    Plaintiff Velasquez purchased a maxi dress from e-commerce retailer Oh Polly on

17  November 17, 2023.

18     45.    Plaintiff Velasquez's purchase included a $4.95 "Order Protection" fee that was

19  automatically and surreptitiously added to her cart, that—for the reasons described above—in fact

20  represented an additional shipping charge.

21     46.    Plaintiff Velasquez did not know the charge existed or that it could have been

22  removed prior to her purchase.

23     47.    Plaintiff Velasquez would not have purchased "Order Protection" if she knew it was

24  optional.

25  **VII.    Plaintiff Clark's Experience**

26     48.    Plaintiff purchased several apparel items from Hurley.com on October 21, 2024.

27     49.    Plaintiff's purchase included a $3.35 "Order Protection" fee that was automatically

28

and surreptitiously added to her cart, that—for the reasons described above—in fact represented an additional shipping charge.

50. Plaintiff did not know the charge existed or could be removed prior to her purchase.

51. Plaintiff would not have purchased "Order Protection" if she knew it was optional.

## **CLASS ALLEGATIONS**

52. Plaintiffs bring this action on behalf of herself and a nationwide Class of all other similarly situated persons. The proposed Class is defined as:

> All consumers who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, paid a "order protection," or other similar fee for a service provided by OrderProtection.

53. Plaintiff Velasquez also brings this action on behalf of a California Subclass.

54. Excluded from the Classes are OrderProtection, any entities in which it has a controlling interest, any of its parents, subsidiaries, affiliates, officers, directors, employees, and members of such persons' immediate families, and the presiding judge(s) in this case and their staff. Plaintiffs reserve the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with her motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

55. Plaintiffs reserve the right to modify or amend the definition of the proposed Classes and/or add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

56. The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Classes. These questions predominate over questions that may affect only individual class members because OrderProtection has acted on grounds generally applicable to the Classes. Such common legal or factual questions include, but are not limited to:

   a. Whether OrderProtection engaged in conduct that prevented or hindered the performance of the contract between e-commerce retailers and the Classes;

b.    Whether OrderProtection's alleged misconduct misled or had the tendency to mislead consumers;

c.    Whether OrderProtection engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

d.    Whether OrderProtection's alleged conduct constitutes violations of the laws asserted;

e.    Whether Plaintiffs and members of the Classes were harmed by OrderProtection's misrepresentations;

f.    Whether OrderProtection was unjustly enriched;

g.    Whether Plaintiffs and the Classes have been damaged, and if so, the proper measure of damages; and

h.    Whether an injunction is necessary to prevent OrderProtection from continuing to engage in the wrongful conduct described herein.

57.    The parties are so numerous that joinder is impracticable. Upon information and belief, and subject to class discovery, the Classes consist of thousands of members or more, the identity of whom are within the exclusive knowledge of OrderProtection and can be ascertained only by resort to OrderProtection's records. OrderProtection has the administrative capability through its computer systems and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiffs.

58.    It is impracticable to bring the individual claims of members of the Classes before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

59.    Plaintiffs' claims are typical of the claims of other Class members in that they arise out of the same wrongful business practices by OrderProtection, as described herein.

60.    Plaintiffs are more than adequate representatives of the Classes in that Plaintiffs are OrderProtection's   customer   and   has   suffered   damages   because   of   OrderProtection's misrepresentations. In addition:

a)    Plaintiffs are committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of consumer class actions;

b)    There is no conflict of interest between Plaintiffs and the unnamed Class members; and

c)    Plaintiffs' legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

61.    Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

62.    OrderProtection has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate corresponding declaratory relief with respect to the Classes as a whole.

63.    All conditions precedent to bringing this action have been satisfied and/or waived.

**FIRST CLAIM FOR RELIEF**
**Tortious Interference With Contract**
**(On Behalf of Plaintiffs and the Nationwide Class)**

64.    Plaintiffs repeat and reallege the above allegations as if fully set forth herein.

65.    Plaintiffs and the Class have contracted with e-commerce retailers for the purchase of merchandise.

66.    OrderProtection had knowledge of the contractual relationship or prospective contractual relationship between e-commerce retailers and Class members like Plaintiffs.

67.    OrderProtection engaged in conduct that prevented or hindered the performance of the contract between e-commerce retailers and the Class by (a) deceptively adding fees into

1  consumers' carts; (b) deceptively naming and describing its fees; (c) charging Plaintiffs and Class

2  members for shipping above and beyond what was promised to them; and (d) charging fees that

3  provide no added value to consumers when reasonable consumers, like Plaintiffs, would not

4  knowingly choose to pay them, absent OrderProtection's deception.

5       68.    OrderProtection intended to prevent or hinder performance of the contract between

6  e-commerce retailers and the Class, including Plaintiffs. As a result, Plaintiffs and the Class were

7  harmed.

8       69.    OrderProtection's conduct as described herein substantially caused the harm inflicted

9  on Plaintiffs and the Class.

**SECOND CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Nationwide Class)**

12       70.    Plaintiffs repeats and realleges the above allegations as if fully set forth herein.

13       71.    To the detriment of Plaintiffs and the Class, OrderProtection has been, and continues

14  to be, unjustly enriched because of its wrongful conduct alleged herein.

15       72.    Plaintiffs and the Class conferred a benefit on OrderProtection.

16       73.    OrderProtection unfairly, deceptively, unjustly, and/or unlawfully accepted said

17  benefits, which, under the circumstances, would be unjust to allow OrderProtection to retain.

18       74.    OrderProtection's unjust enrichment is traceable to, and resulted directly and

19  proximately from, the conduct alleged herein.

20       75.    Damages may not adequately compensate the harms Plaintiffs and the Class

21  sustained because they are not as certain, equally prompt, or otherwise efficient as restitution.

22  Plaintiffs must engage in discovery to determine whether money damages will adequately remedy

23  these harms.

24       76.    Plaintiffs and the Class therefore seek disgorgement of all fees wrongfully retained

25  by OrderProtection because of its inequitable conduct as more fully stated herein.

**THIRD CLAIM FOR RELIEF**
**Violations of California's Unfair Competition Law**
**(Cal. Bus. & Prof. Code § 17200, *et seq*.)**
**(On Behalf of Plaintiff Velasquez and the Nationwide Class, or in the Alternative, the California Class)**

77.    Plaintiff Velasquez repeats and realleges the above allegations as if fully set forth herein.

78.    OrderProtection's conduct described herein violates the Unfair Competition Law ("UCL"), codified at California Business and Professions Code section 17200, *et seq*.

79.    The UCL prohibits, and provides civil remedies for, unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

80.    The UCL imposes strict liability. Plaintiff Velasquez need not prove that OrderProtection intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—only that such practices occurred.

81.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

82.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

83.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

84.    OrderProtection committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by affirmatively and knowingly (a) sneaking fees into consumers' carts; (b) deceptively naming and describing the fees; (c) charging fees that are, in actuality, simply the price involved in the shipping process; and (d) charging fees that provide no added value to consumers.

85.    OrderProtection engages in unfair business practices insofar as the harm to Plaintiff Velasquez and the Classes from OrderProtection's practices outweighs the utility of OrderProtection's practices. There were reasonably available alternatives to further OrderProtection's legitimate business interests, other than engaging in the immoral, unethical, oppressive, and unscrupulous conduct described herein. OrderProtection's acts and practices offend California's and the federal government's established public policy of truthful advertising in the marketplace and constitute immoral, unethical, oppressive, and unscrupulous activities that substantially injure consumers.

86.    OrderProtection's conduct constitutes an "unlawful" act under the UCL because it also constitutes a violation of sections 1770(a)(3), (5), (9), (14), (20), and (29) of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code section 1750, *et seq.*

87.    OrderProtection's conduct also constitutes an "unlawful" act under the UCL because it violates the Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401–05 ("ROSCA"). Specifically, OrderProtection used "negative option" sales "[that] took advantage of consumers' expectations." *Id.*, § 8401(8). Moreover, OrderProtection violated ROSCA by using a negative option feature that (1) did not provide text that clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information; and (2) did not obtain the consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other financial account for products or services through such transaction. *Id.*, § 8403(1), (2).

88.    OrderProtection's business practices have misled Plaintiff Velasquez and the Class and, unless enjoined, will continue to mislead them in the future.

89.    Plaintiff Velasquez relied on OrderProtection's misrepresentations.

90.    OrderProtection deceived Plaintiff Velasquez and the Class into purchasing order protection that they otherwise would not have purchased.

91.    As a direct and proximate result of OrderProtection's unfair, fraudulent, and unlawful practices, Plaintiff Velasquez and the Class suffered and will continue to suffer actual

damages by paying for order protection that they did not want or need. OrderProtection's fraudulent conduct is ongoing and presents a continuing threat to Plaintiff Velasquez and the Class that they will be deceived. Plaintiff Velasquez desires to conduct further business with OrderProtection by continuing to make online purchases through websites that partner with OrderProtection. But Plaintiff Velasquez cannot rely on OrderProtection's representations unless an injunction is issued.

92.    As a result of its unfair, fraudulent, and unlawful conduct, OrderProtection has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff Velasquez and Class members pursuant to Business & Professions Code sections 17203 and 17204.

93.    Pursuant to Business & Professions Code sections 17203 and 17500, Plaintiff Velasquez and Class members, on behalf of the general public, seek an order enjoining OrderProtection from continuing to engage in, use, or employ its unfair, unlawful, and fraudulent practices.

94.    Plaintiff Velasquez has no adequate remedy at law in part because OrderProtection continues to automatically add fees to all purchases. Therefore, an injunction on behalf of the general public is needed to prevent OrderProtection from continuing to engage in the unfair, deceptive, and misleading practices described herein. Such a remedy cannot be obtained through any of Plaintiff Velasquez's legal causes of action.

**FOURTH CLAIM FOR RELIEF**
**False and Misleading Advertising**
**(Bus. & Prof. Code §§ 17500, et seq.)**
**(On Behalf of Plaintiff Velasquez and the Nationwide Class, or in the Alternative, the California Class)**

95.    Plaintiff Velasquez repeats and realleges the above allegations as if fully set forth herein.

96.    California's False Advertising Law ("FAL"), California Business and Professions Code section 17500, states that "[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in

any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

97.     OrderProtection's material misrepresentations and omissions alleged herein violate Business and Professions Code section 17500.

98.     OrderProtection knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

99.     Pursuant to Business and Professions Code sections 17203 and 17500, Plaintiff Velasquez and Class members, on behalf of the general public, seek an order enjoining OrderProtection from continuing to engage in, use, or employ its deceptive practices. Such an order is not obtainable through any of Plaintiff Velasquez's legal causes of action, making any remedy at law inadequate.

100.    Further, Plaintiff Velasquez requests an order awarding Plaintiff Velasquez and Class members restitution of the money wrongfully acquired by OrderProtection by means of said misrepresentations.

101.    Additionally, Plaintiff Velasquez and Class members seek an order requiring OrderProtection to pay attorneys' fees pursuant to California Civil Code section 1021.5.

### FIFTH CLAIM FOR RELIEF
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750, *et seq.***
**(On Behalf of Plaintiff Velasquez and the Nationwide Class, or in the Alternative, the California Class)**

102.    Plaintiff Velasquez incorporates the preceding allegations by reference as if fully set forth herein.

103.    This cause of action is brought pursuant to the Consumers Legal Remedies Act ("CLRA"), California Civil Code section 1750, *et seq.* Plaintiff Velasquez and each member of the proposed Class are "consumers" as defined by California Civil Code section 1761(d). OrderProtection's sale of merchandise and shipping insurance to consumers were "transactions"

within the meaning of California Civil Code section 1761(e). The merchandise purchased by Plaintiff Velasquez and the Class are "goods" within the meaning of California Civil Code section 1761(a).

104. OrderProtection violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code section 1770(a) in transactions with Plaintiff Velasquez and the Class which were intended to result in, and did result in, the sale of merchandise:

      a.    "Misrepresenting the affiliation, connection, or association with, or certification by, another" (a)(3);

      b.    "Representing that goods or services have . . . characteristics . . . that they do not have" (a)(5);

      c.    "Advertising goods or services with intent not to sell them as advertised" (a)(9);

      d.    "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law" (a)(14)

      e.    "Advertising that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement, which may include, but is not limited to, shelf tags, displays, and media advertising, in a size larger than any other price in that advertisement, and (B) the specific price plus a specific percentage of that price represents a markup from the seller's costs or from the wholesale price of the product" (a)(20); and

      f.    "Advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges" (a)(29).

105. Specifically, OrderProtection (a) deceptively added fees into consumers' carts; (b) deceptively named and described the add-on fees; (c) charged Plaintiff Velasquez and Class

1   members for shipping above and beyond what was promised to them; and (d) charged fees that

2   provide no added value to reasonable consumers.

3       106.    Pursuant to section 1782(a) of the CLRA, Plaintiff Velasquez's counsel notified

4   OrderProtection in writing by certified mail of the particular violations of section 1770 of the CLRA

5   and demanded that it rectify the problems associated with the actions detailed above and give notice

6   to all affected consumers of OrderProtection's intent to act. In the event OrderProtection fails to

7   respond to Plaintiff Velasquez's letter and/or fails to agree to rectify the problems associated with

8   the actions detailed above, Plaintiff Velasquez will amend her Complaint to include claims for

9   actual and statutory damages, as appropriate, against OrderProtection.

10      107.    Plaintiff Velasquez also seeks public injunctive relief, as described above. Such a

11  remedy cannot be obtained through any of Plaintiff Velasquez's legal claims.

12                                  **PRAYER FOR RELIEF**

13      **WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, demand a jury trial on

14  all claims so triable and judgment as follows:

15      (a)    Certification of this matter to proceed as a class action on behalf of the Classes;

16      (b)    For declaratory and injunctive relief as set forth above;

17      (c)    For an order requiring OrderProtection to disgorge and make restitution of all monies

18             it acquired by means of the unlawful practices set forth above;

19      (d)    For compensatory damages according to proof;

20      (e)    For reasonable attorneys' fees and costs of suit;

21      (f)    For pre-judgment interest; and

22      (g)    Awarding such other relief as this Court deems just, proper, and equitable.

23  ///

24  ///

25  ///

26  ///

27  ///

28

CLASS ACTION COMPLAINT

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: September 26, 2025                **KALIELGOLD PLLC**

By: *<u>/s/ Amanda J. Rosenberg</u>*
Jeffrey D. Kaliel
Sophia G. Gold
Amanda J. Rosenberg

*Attorneys for Plaintiffs and the Putative Class*